# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| COBBLER NEVADA, LLC | ) | |
| | ) | No. 15 C 7538 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John J. Tharp |
| | ) | |
| DOES 1-28, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Anonymous defendants, identified by the Internet Protocol ("IP") address 73.51.161.46 (herein referred to as "Doe 26") and 98.215.66.174 (herein referred to as "Doe 16"), have each moved to quash a subpoena directing Does' internet service provider to furnish Does' personal identifying information. Doe 16 also moves to dismiss pursuant to Fed. R. Civ. P. 12 (b) for lack of personal jurisdiction and requests an award of fees. For the reasons stated below, the Does' motions are denied.

## BACKGROUND

Cobbler Nevada ("Cobbler") is motion picture developer and producer. Cobbler produced the copyrighted film *The Cobbler* (the "Video") starring Adam Sandler, Ellen Barkin, Steve Buscemi, and Dustin Hoffman. It is available for purchase from various vendors throughout the country. Cobbler has filed suit against twenty-eight "John Doe" defendants, alleging copyright infringement. Cobbler maintains that the defendants unlawfully downloaded and shared Cobbler's copyrighted work using a BitTorrent file sharing protocol. According to the complaint, when using a BitTorrent protocol, "[t]he initial file-provider intentionally elects to share a file with a torrent network. This initial

file is called a seed. Other users ('peers'), and the network, through a series of steps, connect to the seed file to download a movie." Compl. ¶ 4.

BitTorrent generally operates as follows: First, a user seeking to download a copy of a particular file locates on the internet and downloads a small "torrent" file, which is a file that contains information about particular content files available for download. *See* Compl. ¶¶ 4-5. The torrent file determines how the distribution of those content files will work and provides information about the "tracker" computer that will coordinate the distribution of pieces of the content file among users of the torrent (who are referred to as "peers"). Next, the user loads the torrent file into the "BitTorrent client" (a computer program that manages downloads and uploads using BitTorrent protocol), which automatically attempts to connect to the tracker listed in the torrent file. The tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading content file data from, and distributing data to, other peers. A group of peers who have downloaded the same torrent file and who are participating in the same BitTorrent client to download and upload the content file is known as a "swarm." When the download is complete for a given member of the swarm, the BitTorrent client continues distributing data from that user's computer to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same. This is the key distinction between BitTorrent sharing and other file sharing systems: "BitTorrent makes file sharing a cooperative endeavor" because it is "architecturally impossible for any peer on the network to take without giving." Sean B. Karunaratne, *The Case Against Combating BitTorrent Policy through Mass John Doe*

*Copyright Infringement Lawsuits*, 111 Mich. L. Rev, 283, 288-90 (2012) (hereafter, *The Case Against Mass Joinder*).

Cobbler alleges that each of the twenty-eight John Doe defendants intentionally downloaded the torrent file related to the Video, purposefully loaded that torrent file into their BitTorrent clients, entered into the same BitTorrent swarm, and reproduced and distributed the Video among themselves. Currently, Cobbler has named each John Doe defendant only by his or her IP address. Cobbler moved for leave to conduct discovery prior to a Rule 26(f) conference in order to identify the Doe defendants associated with the IP addresses that allegedly participated in the swarm. On September 24, 2015 the Court granted that motion, and Cobbler has subsequently subpoenaed internet service providers for information identifying the Doe defendants. Doe now moves to quash that subpoena.

## DISCUSSION

### I. Motions to Quash Subpoenas

Doe 26 bases his argument in support of quashing the subpoena entirely upon his argument that Cobbler's joinder of twenty-eight participants in a BitTorrent swarm is improper. He should be severed from the case, he argues, and severance would necessarily deprive Cobbler of any basis to seek his personal identifying information from Comcast. In addition to arguing improper joinder, Doe 16 also maintains that the First Amendment protects his identity associated with his IP address and that Cobbler lacked a sufficient evidentiary basis to issue the subpoenas. These arguments are addressed in turn below.

A plaintiff may join defendants in a suit presenting any question of law or fact common to all defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). A court may, on motion or on its own, add or drop a party or sever any claim against any party at any time. Fed. R. Civ. P. 21.

In support of the misjoinder argument, the Does argue that the mass joinder sought by Cobbler is merely a litigation tactic designed to avoid the costs associated with filing a claim against each defendant individually, and such a practice has been rejected by courts across the country. The Court recognizes that there is a split of authority over whether it is appropriate to join many anonymous defendants alleged to have participated in a single BitTorrent "swarm" in a single suit. *Compare, e.g., Digital Sins, Inc. v. Does 1-245*, No. 11-8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) ("where, as here, the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way, it does not satisfy the test for permissive joinder in a single lawsuit") (internal quotation omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11-3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012) (finding joinder inappropriate because, among other reasons, allegations were insufficient to show that the defendants actually shared file bits with one another); *SBO Pictures, Inc. v. Does 1-57*, No. 12-22, 2012 WL 1415523, *2 (D. Md. Apr. 20, 2012) (denying joinder and stating that "the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of the permissive joinder is not satisfied"); *Cinetel Films, Inc. v. Does 1-1,052*, --- F.Supp.2d ---

-, 2012 WL 1142272, *6 (D. Md. Apr. 4, 2012) (stating that "[a] majority of courts . . . have specifically held that the properties of BitTorrent are insufficient to support joinder"); *MCGIP, LLC v. Does 1-149*, No. 11-2331, 2011 WL 4352110, *3 (N.D. Cal. Sep. 16, 2011) (misjoinder where plaintiff "has failed to show that any of the 149 Doe defendants actually exchanged any piece of the seed file with one another"); *Hard Drive Productions, Inc. v. Does 1-188*, 809 F.Supp.2d 1150, 1164 (N.D. Cal. 2011) (finding no concerted action where plaintiff conceded that defendants "may not have been physically present in the swarm on the exact same day and time"); *Boy Racer, Inc. v. Does 1-60*, No. 11-1738, 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011) (severing defendants where "Plaintiff does not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant") *with Pacific Century Int'l v. Does 1-31*, No. 11-9064, 2012 WL 2129003, *2 (N.D. Ill. June 12, 2012) (allowing joinder where "the anonymous defendants participated in the same 'swarm'"); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 244 (S.D.N.Y. Jan. 30, 2012) (declining to sever where "the Doe defendants were trading the exact same file as part of the same swarm"); *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 257 (N.D. Ill. Aug. 16, 2011) (allowing joinder); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. Aug. 9, 2011) (same); *Hard Drive Prods., Inc. v. Does 1-44*, No. 11-2828, at 3 (N.D. Ill. Aug. 9, 2011) (same).

The disagreement among the courts presented with this issues turns on whether claims against multiple defendants who participated in the same BitTorrent swarm arise out of the same series of transactions, as required for joinder under Rule 20 (a)(2)(A). The opponents of mass joinder argue that if Doe 2 enters a swarm after Doe 1 has already

left then Doe 1 has not provided a piece of the file to Doe 2 directly. *See*, *e.g.*, *The Case Against Mass Joinder* at 294-95. But these opponents overlook the fact that the pieces of the file that Doe 1 distributed directly to other Does who were in the swarm contemporaneously with Doe 1 were in turn subsequently distributed by them to the Does who joined the swarm after Doe 1 left. Thus, so long as the Does were part of the same swarm at some point in time, they cannot be said to be completely independent of one another. Moreover, nothing in Rule 20 suggests that joinder requires a direct transaction between every defendant. Rather, Rule 20 permits joinder where there has been a series of transactions, which seems to contemplate an attenuated link between parties and the corresponding transactions.

The Court recognizes that courts "have increasingly accepted [defendants' arguments] and severed the defendants or quashed the subpoenas," *Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 2012 WL 1072312, *3 (N.D. Ill. Mar. 30, 2012). But even the opponents of mass joinder agree that joinder is appropriate when the defendants participated in a swarm contemporaneously. *See*, *e.g.*, *The Case Against Mass Joinder*, *supra*, at 293. Thus, in this case because Cobbler has alleged sufficient facts to establish the doe defendants participated in the same swarm on or about the same time, the requirements of Rule 20 (a)(2)(A) are satisfied.

Specifically, Cobbler alleges in its complaint that the defendants participated in the swarm simultaneously and that it observed the defendants transferring data from the Video between themselves. Compl. ¶ 11. Cobbler states that it "identified each Defendant by the IP address assigned to that Defendant by his or her ISP and the date and the time at which the infringing activity of each defendant was observed." *Id*. ¶ 14. The Court takes

this allegation to mean that Cobbler has observed at least some of the defendants simultaneously sharing the Video or portions of the Video with one another in the BitTorrent swarm. Cobbler also alleges, upon information and belief, that the defendants continue to reproduce and distribute the Video through BitTorrent. *Id*.

The courts that have denied joinder in the BitTorrent context have generally done so because the plaintiff failed to allege that the defendants simultaneously participated in a single swarm or that the defendants distributed files directly among themselves. But Cobbler's allegations, taken as true (as they must be at present), overcome these objections. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is plausible, based on these allegations, that Doe shared copyrighted data with others in the swarm including some or all of the other defendants.

As to the second requirement for joinder, this lawsuit appears to involve questions of law and fact common to all defendants, including whether Cobbler is a proper copyright holder, whether violations of the Copyright Act have occurred, and whether entering a BitTorrent swarm constitutes willful copyright infringement. *See Pacific Century Int'l*, 2012 WL 2129003, at *3. Doe argues that the defendants will likely raise individual defenses that differ vastly. While this is undoubtedly true, it does not mean that joinder is improper pursuant to Fed. R. Civ. P. 20(a)(2)(B). Rule 20 requires only that "any question of law or fact [be] common to all defendants," not that *every* question of law or fact be common. *Id.* Accordingly, joinder is proper here, and the Court denies Doe's motion to sever for improper joinder.

Similarly, Doe 16's argument that the First Amendment protects his identity associated with the subpoenaed IP address is unpersuasive. Doe 16 contends that his First Amendment associational privilege would be cooled by disclosing his subscriber identity to third parties. The First Amendment associational privilege does emerge when a discovery request specifically asks for a list of a group's anonymous members, or requests any similar information that goes to the heart of an organization's associational activities, and such disclosure could arguably infringe upon associational rights. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir.1985). But an infringement on that right only occurs if disclosure would adversely affect the members' ability to pursue a collective effort by convincing them to withdraw from that organization, to dissuade others from joining it, or would subject them to public hostility. *Natl. Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958). Although a concrete showing of infringement is unnecessary to invoke the protections of the First Amendment's association clause, the movant must show "there is some probability that disclosure will lead to reprisal or harassment." *Black Panther Party v. Smith*, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981).

Here, Doe 16 has failed to show any probability that complying with the subpoena will lead to harassment. First, this Court has entered an order keeping Doe 16's identity under seal until further order. *See* Dkt. Entry 10. Thus, no disclosure has occurred that will allow "everyone in the world" to connect his IP address with other internet activity, as Doe 16 fears. Second, Doe 16 has identified no group that he belongs to or a "collective effort" that would be adversely impacted by complying with the subpoena. Rather, he merely makes vague statements about the subpoena's potential chilling effect

on his unidentified political speech. But the plaintiff is not seeking information relating to his political activity; rather, the plaintiff has obtained information that plausibly suggests (see below) that he infringed its copyright with respect to the film in question; it therefore has a valid basis to seek Doe 16's identity that does not implicate Doe 16's First Amendment rights. Cobbler's action has nothing to do with Doe 16's association with any cause or group—other than those who are alleged to have participated in the swarm that unlawfully downloaded the Cobbler film.

Doe 16 also maintains that Cobbler lacks a sufficient evidentiary basis for issuing the subpoenas. Doe 16 contends that the location of the IP address does not identify the actual infringer because the IP addresses can be hacked into or faked all together. This argument misunderstands the plaintiff's pleading burden. To state a claim (which is to say, to conduct discovery), a plaintiff must allege facts that plausibly suggest an entitlement to relief; a complaint need not anticipate defenses or allege facts that demonstrate that the defendant's liability is indisputable. In this context, while it is certainly possible that someone other than an internet account subscriber accessed the swarm, the inference that the activity in the account is that of the person who created the account is obviously plausible. The creation of the account provides a documented link to the subscriber that is missing with respect to others who might have done so; where the involvement of someone other than the subscriber is, at this stage, purely speculative, there is a logical basis to infer a connection between account activity and the account subscriber. Whether the account subscriber is, in fact, responsible for that activity is of course a question of fact that can and should be resolved during the discovery process. Although Fed. R. Civ. P. 45 does require counsel to take steps to avoid unnecessary

harassment and to serve the correct defendants, as Doe 16 correctly notes, those steps only need to be reasonable. *See* Fed. R. Civ. P. 45.[1] Given that the IP addresses obtained by Cobbler are allegedly the source of the illegal downloads—and absent a subpoena that is only identifying information available to the plaintiffs—it is perfectly reasonable for them to craft subpoenas directed towards those IP addresses. This is not "fishing," as Doe 16 claims, but rather an attempt by Cobbler to identify those who are plausibly responsible for the unlawful downloads alleged.

## II. Personal Jurisdiction

Doe 16 also argues that this court lacks personal jurisdiction over him because "[d]efendant fails to identify where they hail from and…this court has not the information to determine jurisdiction." Mot. to Quash at 2-3. Rule 12 (b)(2) permits dismissal of a claim for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12 (b)(2). Since the Copyright Act does not provide for nationwide service of process, a federal court in Illinois may exercise personal jurisdiction over a defendant only if authorized by Illinois law and the United States Constitution. *See be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). Illinois law allows personal jurisdiction to the extent authorized by the Fourteenth Amendment's Due Process Clause, which merges the federal constitutional and state statutory inquiries together. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Under the Illinois long-arm statute, personal jurisdiction can be general or specific. *uBid, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 425 (7th Cir. 2010).

In order to establish specific jurisdiction, the plaintiff must allege that (1) the defendant has purposefully directed his activities at the forum state or purposefully

---

[1] To the extent that Doe 2 is suggesting that the subpoena is unduly burdensome or harassing to the ISP provider, he lacks standing to do so.

availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 703. Here, the complaint satisfies these criteria. The complaint alleges that it has "used geolocation technology to trace the Internet Protocol addresses of each defendant to a point of origin within this District," Compl. at ¶ 4. It is not as if the plaintiff is alleging that the defendant operated a passive website that did not purposefully target the state of Illinois, which could make personal jurisdiction improper. *See be2LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011). Rather, Cobbler is alleging that the plaintiffs had IP addresses registered within the Northern District of Illinois, and from each of those IP addresses infringement activity was allegedly occurring. Thus, because Cobblers offers evidence indicating that Doe's 2 IP address was registered within Illinois and the alleged harm emanated from that location, both steps of the specific jurisdiction analysis are readily satisfied.

\* \* \*

Discovery of identifying information is necessary for this case to proceed. Accordingly, the Court denies the motion to quash the subpoena and request for fees.

Date: January 15, 2015

John J. Tharp, Jr.
United States District Judge